I was just saying that this is a case affirmed to that opinion by the board and therefore will the court has to look at the I.J.'s opinion as the final agency determination and here I got a little confused looking at this fellow's testimony about whether his father was running for mayor or village council or what? What was he running for? He was running for a position called Sarpanch, which is the village head. That's like mayor, isn't it? Something like that in a village. Why the ambiguity in the testimony about which he was running for? Actually, Your Honor, if you look at the administrative record at page 187, the petitioner explains that the panchayat is a panel consisting of five members and there's one Sarpanch. Which page did he say to look at? 187. So therefore, he clearly testified in his, during the course of the proceedings what the panchayat is. There's members of the village council and there's a head. Just because he didn't separate that and call it Sarpanch in his declaration doesn't negate the fact that in fact a panchayat has a Sarpanch as a head and therefore there might not really be any need to differentiate between the board and its head, the mayor, especially since he... It says here on 188, page 4, his father was not running for Sarpanch. But I thought it said at another place his father was running for Sarpanch. Actually, I was referring to page 187. Yeah, but I was referring to page 188. He was saying, I think what he was trying to clarify here was that his father was running, but he wasn't actually running on the day of the elections because he was in custody. And so therefore, he really couldn't run. Why couldn't the I.J. We have a very deferential standard of review. We can't overturn the I.J.'s credibility determination unless the evidence compels it. And here, to me, the most, although you can think of another reading, the most straightforward reading of 188, lines 4 and 5, is that his father is not running for Sarpanch. But as I remember at another place, and you just told me this is right, his father is running for Sarpanch. Well, Your Honor, on direct examination, I don't have the page in front of me. He stated that on January the 16th of 93, he and his father were arrested before the local elections in which his father was running. Running for what? For Sarpanch. And on page 188, he clarifies that in his mind, he viewed it as the father was no longer a candidate because he was in custody. We don't know for sure. So where is the page where he says his father is running for Sarpanch? One moment. I remember how much my kids hated it when I was being nominated for U.S. district judge. They noticed that sort of thing. Okay. And then on page 94, he starts talking about that arrest and the fact that there was an election. And then on 96, he starts talking about how the police candidate was running. And on 97, on line 14, he says that my father was running for the seat of Sarpanch. And in fact, his father had been a Sarpanch for the previous 11 years. That's also contained in his written declaration. More importantly, during his asylum interview, he offered as his testimony to the asylum officer that, in fact, his father was the Sarpanch. Therefore, it makes it very strange for the IJ to pick on this point as a reason to find him suspicious. It's real significant to me. I mean, gosh, I know a guy whose father ran for mayor. There's no way he could say my father ran for mayor or my father did not run for mayor unless he was a liar. Do you notice that sort of thing about what your father is doing? Certainly, Your Honor. But when the application was made, I don't believe an attorney assisted him in making it. Why do you need an attorney to assist you in telling what office your father ran for? Well, an attorney would help you to clarify what points are important to contain in your application and which are not. Even if it's not important, totally trivial. I still don't see how an honest man could give conflicting stories about whether his father is running for Sarpanch or not. But, Your Honor, there is no conflict in the sense that the declaration states that there was an election, and during his asylum interview, and again, he reiterated during his individual hearing, that during that particular election, his own father campaigned and ran. And in his declaration, he states that the father was a Sarpanch for a significant period of time. If he hadn't contained that information, then certainly, perhaps, it might look like he is enhancing his claim. But, in fact, here he's simply elaborating with greater detail when asked about the events that based his claim and the reasons why he was persecuted. What about the discrepancy in the dates regarding when Hardee was arrested? Right. The IHA found that the petitioner told the asylum officer that Hardee was arrested July 97. And in his case, the declaration states it was July 1, 1997. And in his case, the declaration states it was December 8th, pardon me, that it was September 8th, 98. But I think this is... And wasn't there a February 13th? That related to when he and Hardee went to the police station. If I could address the first date, the most significant points that the court should look at to see if the petitioner was consistent was regarding his own arrests. He testified to five arrests, and he testified consistently at the asylum office on direct and on cross-examination with his written declaration regarding his five arrests. So I think that if he made a minor mistake about one of the arrests of his employee Hardeev, then that doesn't necessarily go to the heart of his claim. But if this is the basis that precipitated his own persecution, that's very important. And if this is the pivotal event that culminated in his persecution, why wouldn't that be important in terms of the detail? Well, Your Honor, we're talking about events that occurred five to six years prior to the Merricks hearing. And I think that under the strain of this hearing, which would determine the course of his future, one small mistake about another person's arrest, when his testimony regarding Hardeev's other arrests were consistent, does not go to the heart of the claim, especially since he was able to testify consistently and in detail regarding the circumstances of that arrest and how that precipitated his own arrest. That may be true, but does it compel us to find otherwise? It's a very high standard for us when we're reviewing these cases. Certainly, Your Honor. But I think if you look at the totality of the circumstances which the court is charged to do, then this mistake and a small other mistake about an arrest date a few months apart from what the declaration contains is, after all, minor. Regarding your other question about when he and Hardeev went to the police station, he testified February 13, 07, but told the asylum officer July 13, 07. I think that clearly 97. I'm sorry. That clearly shows that was just a matter of confusion, a trivial mistake. He's got the day of the month right. He's got the year right. And really it seems more of a slip of the tongue than an actual mistake or one that would really go to the heart of the claim. Or someone who can't remember what he's supposed to say. Yes, Your Honor. But keeping in mind the events occurred at least five years prior to the hearing, I think it's completely reasonable and understandable to have a bit of a slip-up, especially when you've got, again, the date and the year right. Thank you, counsel. Good morning, Your Honors. May it please the Court. My name is Jeffrey Bernstein, and I represent the Acting Attorney General. As this Court has observed in the last argument and in this argument, adverse credibility determinations can only be overturned if there is not cogent and specific reasons provided by the fact finder and if the evidence compels the conclusion that the individual was a credible witness. And in this case, the Petitioners have not demonstrated either one. Let me talk about the Sarpanch incident, first of all, that Judge Kleinfeld asked about. Yes, the transcript reflects exactly what Judge Kleinfeld observed. And the answer is he was in jail. Well, there's no reason why he couldn't have been running for election if he's in jail. Presumably, he was on the ballot. Presumably, everybody knew he was running. There's no reason why he couldn't have stood for election. So that really does not explain. However, there are other issues with that. But, counsel, before we leave that, in the transcript, what specifically is the inconsistency to which you refer? Give us the page, question and answer. Well, as Judge Kleinfeld noted, it was page 188. He said that his father was not running for Sarpanch when he had said earlier that he was running for Sarpanch, certainly earlier in his testimony. Did the I.J. indicate that she didn't believe his father had been Sarpanch for a certain amount of time? No. It's quite possible for some. I don't know how these elections run. He can be running for village council and then something can happen and he's not running because he's not there to campaign. He's in jail. Petitioner has the burden of proof, Your Honor, and there was not one shred of evidence to show that somebody running for Sarpanch has to be there on the day of election. Let me ask you something about that. Elections do vary. People do run from jail. I don't know if it matters. Mayor Curley won his election for mayor of Boston while he was in jail, as I recall. How come nobody ever calls these foreign countries and gets telephonic testimony? It's the burden. It's the petitioner, the alien's burden, Your Honor. I see people lined up to get cheap telephone cards all the time. I know it's possible. I agree, Your Honor, and the alien should have done so. No. Why wouldn't the government? Why wouldn't the government? Anybody could. Yeah, if the government is challenging this testimony, why wouldn't the government have called to confirm? When we did insurance defense or criminal defense or something like that, we didn't just sit on our rights as the burden of proof. We got witnesses. Well, it is the burden of proof. I mean, we are sitting on the burden of proof because it is their burden, and if the government thinks that the petitioner can't prove his case, then the government is not going to go in every case and spend millions of dollars. I've never seen any case, frankly, where somebody made a call, and if I'd ever billed clients millions of dollars where I did, they would not have come back. It doesn't seem like that big a deal. How come nobody does it on either side? Your Honor, I can't answer that question. Well, there are embassies all over the world. We have embassies in every country, practically, and it would be a simple matter for the embassy to give us a declaration regarding the customs or what elections took place at a particular year, who the candidates were. Surely, Your Honor. That would be a simple matter. And it would be a simple matter for the alien to go to the embassy and get the same information. Or they could skip the embassy. The alien could just call his father. Hey, Dad, what were you running for? That's right. He could have gotten a declaration. He could have gotten a declaration from his father explaining all that. But he did not. He could have gotten a declaration and just call him in court. Is there some bar on that? I don't think there's a bar on him calling his father. I think his father was an NDA, interestingly enough. They have telephone calls between India and the United States. Yes, that's true. I guess he could have testified by telephone. That's what I'm talking about. Obviously, the immigration officer, in this case, testified by telephone. So it could have been done. But the alien apparently chose not to do that. The alien could use the phone card he uses maybe to call Mom and Dad Sunday and call him from court, right? Absolutely, Your Honor. And he made no attempt to do so. Now, with respect to the panciat. You take the risk. If we determine that these determinations were not substantial, that they didn't go to the heart of the matter, then you run a risk by standing on your argument regarding their failure to meet their burden of proof. Well, I mean, as a legal matter, Your Honor, I don't see how you can reach that conclusion that the government was. Happened lots of times. The government was prejudiced by their failure to provide evidence when it's not their burden of proof. The government does the best they can to litigate these cases. And it's not the government's burden to an expense to litigate both sides of these cases, Your Honor. But in criminal cases, you do. The government does that regularly. Not in these cases. In a lot of cases. And I apologize for interrupting. But not in these cases. Am I right that you can get evidence in in these cases without having to fly people over, that you can get hearsay in, get telephonic testimony in? It's an administrative hearing, so hearsay evidence is admissible. And obviously – And, of course, the plaintiff, or the petitioner, rather, could likewise get telephone evidence in, get hearsay in. As was the case in this case with the government putting on the asylum officer when he testified by telephone. And both sides can get unsworn materials in? They put newspaper clippings, things like that? Yes. Yes, Your Honor, absolutely. So there's really – now that telephones are cheap and you can use Skype and basically call for free, there's really no barrier to the petitioner getting evidence or the government, is there? I would presume not, Your Honor. I mean, I don't litigate these cases, so I'm not going to tell you absolutely. But I reach the same conclusion that you do. On the running from jail business, wasn't the I.J.'s finding mostly based on the fact that he hadn't included in the original application something about his father being Sarpatch and he added it later? Wasn't it more that than this business of, well, he wasn't running from jail? Well, yes. But, I mean, all this evidence just validates that conclusion, as well as the fact that in the declaration he – He didn't mention his father was Sarpatch in his asylum, but he did say so when he was interviewed. He did. But let me just give you the – I just have a, you know – If I can give you the context, Your Honor, hopefully that will answer your question. All right. But in the context that I'm talking about, the declaration didn't mention Sarpatch. It just said that they were campaigning, not even – didn't even mention that he was running. It said he was campaigning for the panjayat, which apparently is the council. And that's it. In the asylum interview, he did mention Sarpatch, as I recall. But he said that the police weren't interested in the politics. All they were interested in is who the petitioner and his father were transporting. He didn't mention anything about this – what he mentioned at the administrative hearing, when he started talking about his father was running for panjayat and the police arrested him because they didn't want him to oppose their candidate. This was just completely new and clearly an attempt to massage his claim, clearly another demonstration of this alien's attempt to say anything that he thought he needed to say at whatever time to establish his claim. But what was the specific basis for the adverse credibility determination? That's what we're limited to reviewing. No, Your Honor. You're not limited to that at all. You're limited to determining whether or not evidence compels a contrary conclusion. So in doing that, you can look at all of this. You don't have to – you're not – you're not confined – What case are you relying upon to support your proposition that we are not limited to the specific adverse credibility determination made by the IJ? The specific reasons. The specific reasons. I don't know that I have a case for that, but I don't think there's any cases that say that's all you can listen to. Your standard review is broad and narrow at the same time. You have to affirm unless evidence compels a contrary conclusion. And so you have to consider the entire record to determine whether or not the immigration judge's adverse credibility determination is not supported by substantial evidence. But the IJ had to give specific cogent reasons, and that's what we reviewed in terms of whether – He did give – And that's why I'm asking you whether or not we have to look at those specific reasons. But you're saying no, we don't? That's right. He does have to give specific and cogent reasons. But in order to affirm those specific and cogent reasons, you don't have to – you're not confined to exactly what he – the reasons he gave. If I could go on, Your Honor. I think the dates speak for themselves. They're not minor. They're – you know, there's a difference of months. And certainly in the context as well, you're talking about someone who obviously had to think – was required to think about these dates when he was writing his asylum application. He should have thought about these dates when he was preparing for his asylum interview. He should have thought about these dates when he was preparing for his asylum hearing. But yet, before the asylum officer, he said three – well, two or three – he changed his mind at least twice with respect to the date. That's an indication of somebody, as Judge Rawlinson indicated, who isn't really sure about his story. So we think the dates are not minor. They go to the heart of the claim. I mean, these are events which happened to him which provide the basis for his asylum claim. He shouldn't have been confused about those. And the immigration judge was quite right in holding him to those disparities. Let me just – Thank you, counsel. Thank you, Your Honor. Your Honors, I just want to point out to the record at page 403, which is the first page of the declaration, and the Petitioner states, We were campaigning in reference to the elections, which I think indicates a strong indication that they were campaigning for something. Our argument is for the Sarpanch elections. On page 414, the father's affidavit, Balwant Singh says he's an ex-Sarpanch. The I.G. never discounted this affidavit, gave it full weight as far as the record is concerned, and therefore, it should be given full weight. And lastly, the I.J. didn't say that she didn't believe the father was a Sarpanch. She simply questioned why the police were interested in him. Clearly, because the Akali Dalman supported him, the police would be interested as they were fronting a candidate that was from another side. Thank you, counsel. Can I just ask you one question? Do you agree with opposing counsel that our review is not limited to the reasons given by the I.J. in making its adverse credibility? I completely disagree, although I don't have a case in mind. Thank you. Thank you. Singh v. Gonzalez is submitted.
judges: Kleinfeld, Rawlinson, Restani